IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD HAWN and PAM HAWN | § | |
| Plaintiffs, | § | CASE NO. _____ |
| | § | |
| VS. | § | |
| | § | |
| MEDTRONIC MINIMED, INC., a Delaware | § | |
| corporation; MEDTRONIC, INC., a | § | |
| Minnesota corporation; UNOMEDICAL | § | |
| DEVICES SA de CV, a Mexican corporation; | § | |
| UNOMEDICAL A/S, a Danish corporation; | § | |
| CONVATEC, INC., a Delaware corporation; | § | JURY TRIAL REQUESTED |
| and DOES 1-100, | § | |
| Defendants. | § | |

**COMPLAINT**

Come now DONALD HAWN and PAM HAWN ("PLAINTIFFS"), who complain and

alleges as follows:

**PARTIES**

1.      Plaintiffs, DONALD HAWN and PAM HAWN, at all times material hereto, were

residing in and were citizens of Kentucky.

2.      Defendant MEDTRONIC MINIMED, INC. is a corporation duly organized under the

laws of the State of Delaware, with its principal place of business in Northridge, California.

3.      Defendant MEDTRONIC, INC. Is a corporation duly organized under the laws of the

State of Minnesota, with its principal place of business in Northridge, California.  It is the parent and

sole owner of Defendant MEDTRONIC MINIMED, INC.  Defendant MEDTRONIC, INC. routinely

conducts business in the County of Los Angeles and is registered to conduct business in California.

-1-

MEDTRONIC MINIMED, INC. and MEDTRONIC, INC. are collectively hereinafter referred to as "MEDTRONIC."

4.      Defendant UNOMEDICAL DEVICES SA de CV is a Mexican corporation.

5.      Defendant UNOMEDICAL A/S is a Danish corporation.

6.      Defendant CONVATEC, INC. is a corporation organized under the laws of the State of Delaware, with its principal place of business in New Jersey.

7.      MEDTRONIC, INC., MEDTRONIC MINIMED, INC., UNOMEDICAL DEVICES SA de CV, UNOMEDICAL A/S, and CONVATEC, INC., are collectively hereinafter referred to as "DEFENDANTS," and are or, at all relevant times, were in the business of designing, manufacturing, marketing and distributing Minimed Paradigm Quick-Set Infusion Sets.

8.      PLAINTIFFS are ignorant of the true names or capacities of the DEFENDANTS sued herein under the fictitious names DOES 1 through 100, inclusive; and they are therefore sued pursuant to Code of Civil Procedure § 474.  When their true names and capacity are ascertained, PLAINTIFFS will amend this complaint by inserting their true names and capacity herein. PLAINTIFFS are informed and believe and, based thereon, allege that DEFENDANTS DOES 1 through 100, inclusive, are legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said DEFENDANTS DOES 1 through 100, either through said DEFENDANTS' own conduct or through the conduct of their agents and/or employees, proximately caused the injuries and damages by reason of negligent, careless, strictly liable, deliberately indifferent, intentional, willful or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, strictly liable, willful or wanton misconduct in creating and otherwise causing the incidents, conditions and circumstances hereinafter set forth, or by reason of direct or

imputed negligence, strict liability or vicarious fault or breach of duty arising out of the matters herein alleged.  PLAINTIFFS will seek leave to amend this complaint to set forth said true names and identities of the unknown named DOE DEFENDANTS when they are ascertained.

9.      PLAINTIFFS are informed and believe and, based thereon, allege that at all relevant times, each of the DEFENDANTS, whether named or fictitiously named as DOE (hereinafter collectively referred to as "DEFENDANTS"), was the merging entity, merged entity, subsidiary, acquiring corporation, agent and/or employee of each of the remaining DEFENDANTS and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and/or employment with the knowledge, advice, permission and consent of each other.

10.      To the extent a corporate defendant, it is believed that any such defendant's corporate officers and directors ratified and approved any wrongful conduct alleged in the complaint, or were directly responsible for perpetrating such conduct.

11.      Further, it is alleged upon information and belief that each and every defendant is the alter ego of the remaining DEFENDANTS and conspired and/or agreed with the remaining DEFENDANTS to commit the acts set forth in this complaint.

## VENUE AND JURISDICTION

12.      The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This civil action is between citizens of different states. Each Defendant maintains sufficient minimum contacts with the State of Texas such that the exercise of jurisdiction over each Defendant by Texas courts would not offend traditional notions of fair play and substantial justice. By reason of the foregoing circumstances, this Court has diversity jurisdiction over this lawsuit. 28 U.S.C. § 1332(a)(1).

13.     All Defendants are residents of Texas. All Defendants are subject to this Court's personal jurisdiction with respect to this action. Each Defendant's contacts with the Southern District of Texas are sufficient to subject it to personal jurisdiction if that district were a separate State. By reason of the above and foregoing circumstances, this Court has venue over this lawsuit under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### A.    Minimed Paradigm Quick-Set Infusion Sets

14.     DEFENDANTS designed, manufactured, marketed and distributed the Minimed Paradigm Quick-Set Infusion Sets which were advertised to deliver insulin from an insulin pump to a diabetes patient in measured amounts.  The Minimed Paradigm Quick-Set Infusion Sets consist of disposable plastic tubes which transport the insulin from the pump to the patient's body.

15.     The Minimed Paradigm Quick-Set Infusion Sets is used in conjunction with an insulin pump to help diabetics regulate their blood sugar by providing a constant source of insulin.  They provide an alternative to multiple daily injections of insulin.  The pump, about the size of a deck of cards, weights only a few ounces and can be worn on a belt or kept in a pouch under clothing.  The pump connects to flexible plastic tubing that delivers insulin to the body.  Users set the pump to give a steady trickle of insulin throughout the day.  It can be programmed to release larger doses at meals or at times when blood sugar is too high.

16.     The Minimed Paradigm Quick-Set Infusion Sets is used in conjunction with an insulin pump to help diabetics regulate their blood sugar by providing a constant source of insulin.  They provide an alternative to multiple daily injections of insulin.  The pump, about the size of a deck of cards, weights only a few ounces and can be worn on a belt or kept in a pouch under clothing.  The

pump connects to flexible plastic tubing that delivers insulin to the body. Users set the pump to give a steady trickle of insulin throughout the day. It can be programmed to release larger doses at meals or at times when blood sugar is too high.

17.    PLAINTIFFS had no way of knowing that the Minimed Paradigm Quick-Set Infusion Sets that she was using were defective in design, manufacture, and marketing, and that, even when used in conformance with DEFENDANTS' instructions, they were prone to deliver incorrect and life-threatening doses of insulin.

### B.    Medtronic: High Ideals, Low Quality

#### 1.    What Medtronic Claims To Do

18.    Medtronic touts its leadership in the medical device industry: "No other company has 25 years of continuous leadership in diabetes device solutions that improve patients' lives. At Medtronic Diabetes, we are passionate about diabetes care, have a highly trusted brand and a proven track record for advancing solutions." This claim is echoed in part of Medtronic's mission statement in which Medtronic vows to "strive without reserve for the greatest possible reliability and quality in our products; to be the unsurpassed standard of comparison and to be recognized as a company of dedication, honesty, integrity, and service."

#### 2.    What Medtronic Actually Does

19.    In sharp contrast to these virtuous ideals are statements from a June 1, 2009 letter from the United States Food and Drug Administration ("FDA") to William A. Hawkins, Medtronic's president and chief executive officer regarding Medtronic PR Operations Co., the firm where Minimed insulin pumps are manufactured. In criticizing Medtronic's manufacturing and reporting processes, the FDA cited Medtronic for:

Failure to report to FDA no later than 30 calendar days after the day that you receive or otherwise become aware of information, from any source, that reasonably suggests that a device that you market: (1) may have caused or contributed to a death or serious injury; or (2) has malfunctioned and this device or a similar device that you market would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur ...

20.    In contravention of applicable regulations, Medtronic had failed to report an incident involving a Minimed insulin pump in which "device failure or malfunction may have contributed to or caused the user's hospitalization and the device's malfunction would be likely to cause or contribute to a death or serious injury, if the malfunction were to occur."

21.    The FDA also found fault with the personnel that Medtronic entrusted at its manufacturing facility in Puerto Rico with determining whether a Medtronic device was dangerous. Specifically, the FDA cited Medtronic for:

Failure to have a person who is qualified to make a medical judgment reasonably conclude that a device did not cause or contribute to a death or serious injury, or that a malfunction would not be likely to cause or contribute to a death or serious injury if it were to recur, as required by [United States federal law]. Persons qualified to make a medical judgment include physicians, nurses, risk managers, and biomedical engineers, under [United States federal law].

22.    According to the FDA investigators, Medtronic's plant had a wide range of problems that included lax testing of products for defects, proper record keeping, and employing someone with only a high school education and some special training as a medical expert for determining the danger of defects. As the FDA's investigation revealed, Medtronic's employee entrusted with making this critical determination "only had a high school diploma with some additional in-house training."

23.    In listing these and other violations, the FDA concluded that the problems may be "symptomatic of serious problems in" Medtronic's manufacturing procedures and its quality controls.

24.    None of the cited violations reflect Medtronic's hollow promise to strive "without reserve for the greatest possible reliability and quality in our products; to be the unsurpassed standard of comparison and to be recognized as a company of dedication, honesty, integrity and service."

25.    The FDA issued a Press Release which states that the Minimed Paradigm Quick-Set Infusion Sets used with Minimed Paradigm insulin pumps were being recalled because the affected infusion sets may not allow the insulin pump to vent air pressure properly.  This could potentially result in the device delivering too much or too little insulin and may lead to serious injury or death.

26.    On or about June 29, 2009, the FDA issued a "Class 1" recall of many of Defendants' insulin infusion sets labeled as "Paradigm Quick-Set Infusion Sets" that utilized components manufactured by Unomedical and/or ConvaTec.  Specifically, the FDA recalled infusion sets with model numbers MMT-396, MMT-397, MMT-398, and MMT-399 (with lot numbers beginning with "8," for example 8XXXXXX).  According to the FDA, the devices had been manufactured and distributed from December 1, 2007 through June 18, 2009.  A Class 1 recall is "the most serious type of recall and involve situations in which there is a reasonable probability that use of these products will cause serious injury or death."  As the FDA noted, "These infusion sets may not allow the insulin pump to vent air pressure properly.  This could potentially result in the device delivering too much or too little insulin and may cause serious injury or death."  In the recall, three million of the disposable infusion sets were recalled.

27.    DEFENDANTS were aware, or should have been aware, of the risk of their products and production deficiencies, but proceeded with conscious indifference to the rights, safety and welfare of others.  Over or under delivery of insulin from an insulin pump could have serious and catastrophic consequences for diabetic patients.

28.    As a result of the failure of the Minimed Paradigm Quick-Set Infusion Sets (hereinafter also "Device(s)"), without being limited thereto, PLAINTIFFS suffered severe and permanent injuries.  PLAINTIFFS had no reason to suspect that the Minimed Quick-Set Infusion Sets could have caused the injuries alleged until after the FDA issued the warning letter to Medtronic and forced a recall of the Lot 8 infusion sets in June 2009, both of which called into question the safety of the Minimed Paradigm Quick-Set Infusion Sets publicly for the first time.

**C.    Plaintiff Was Injured By Her Use of Defendants' Products**

29.    PLAINTIFF DONALD HAWN was diagnosed as being diabetic and is required to infuse insulin into his body to control his blood sugar.

30.    Insulin is a hormone naturally produced in the pancreas that help convert sugar from food into energy the body uses.  The pancreas releases more insulin when blood sugar goes up, and less as blood sugar drops.  A person with diabetes, however, either does not produce insulin in sufficient amounts or does not produce insulin at all.  To survive, diabetics must get insulin from daily injections or an insulin pump.  Pumps help minimize the highs and lows, reducing diabetes' long term effects, such as kidney failure, limb loss, and blindness.

31.    PLAINTIFF DONALD HAWN utilized the Minimed insulin pump and Minimed Paradigm Quick-Set Infusion Sets in an effort to manage and control his diabetes.

32.     PLAINTIFF DONALD HAWN was correctly using the Minimed insulin pump and Minimed Paradigm Quick-Set Infusion Sets when he failed to receive the correct dose of insulin to manage his diabetic condition.  Consequently, PLAINTIFF DONALD HAWN was injured due to the incorrect does of insulin.  DEFENDANTS are liable to PLAINTIFFS for all consequential damages incurred as a result of injuries to PLAINTIFF DONALD HAWN and are liable for PLAINTIFFS' economic and non-economic damages, past loss of income, future loss of earning capacity, pain, suffering, emotional distress, medical expenses, medical treatment costs, hospitalization and rehabilitation costs, attendant care, nursing care, loss of earnings, loss of consortium, punitive damages, and costs and pre-judgment interest.

33.     As a direct and proximate result of the DEFENDANTS' acts and omissions, PLAINTIFFS have suffered and will continue to suffer damages as more fully set out below.

34.     PLAINTIFF DONALD HAWN began using a Medtronic Minimed Insulin Pump in or around 2004. Sometime in or around 2009, he returned a pump to Medtronic to get an upgrade, a 513 model. He later returned the second model to get an upgrade, a 713 model. He began using a 723 model on or about March 27, 2013. This model used Quick-sets (MMT-332A)(reservoirs) and MMT-397 (Quick-sets).

35.     On or about May 4, 2013, PLAINTIFF DONALD HAWN was correctly using the Minimed insulin pump and Minimed Paradigm Quick-Set Infusion Sets when he failed to receive the correct doses of insulin to manage her diabetic condition. As a result, he suffered a seizure, and fell and suffered serious physical injuries, including a dislocated shoulder and broken bones. Again, on or about June 13, 2013, PLAINTIFF DONALD HAWN was correctly using the Minimed insulin pump and Minimed Paradigm Quick-Set Infusion Sets when he failed to receive the correct doses

-9-

of insulin to manage her diabetic condition. As a result, he began suffering back pain, for which he received treatment. Again, on or about June 19, 2013, PLAINTIFF DONALD HAWN was correctly using the Minimed insulin pump and Minimed Paradigm Quick-Set Infusion Sets when he failed to receive the correct doses of insulin to manage her diabetic condition. As a result, he suffered diabetic ketoacidosis and vomiting, for which he received treatment. He was transitioned from insulin pump to insulin injections. As a result of the malfunction of the Minimed insulin pump and Minimed Paradigm Quick-Set Infusion Sets, PLAINTIFF DONALD HAWN lost his job as a nurse.

36.    As a direct and proximate result of the DEFENDANTS' acts and omissions, PLAINTIFFS have suffered and will continue to suffer damages as more fully set out below.

## FIRST CAUSE OF ACTION

## STRICT LIABILITY

Brought by PLAINTIFFS against DEFENDANTS MEDTRONIC MINIMED, INC., MEDTRONIC, INC., UNOMEDICAL DEVICES SA de CV, UNOMEDICAL A/S, CONVATEC, INC., and DOES 1-100

37.    PLAINTIFFS refer to and incorporate all of the paragraphs of this complaint as though fully set forth herein.

38.    At all times relevant to this action, DEFENDANTS were engaged in the business of manufacturing, producing, inspecting, testing, packaging, warranting, distributing, selling, and otherwise placing the Devices into the stream of commerce.  The Devices were manufactured and used for the purpose of managing and controlling diabetes through insulin delivery systems, and other related uses and DEFENDANTS were the designers, manufacturers, marketers, sellers and/or

distributors of various medical instrumentalities, including the Minimed Paradigm Quick-Set Infusion Sets, for use by ultimate consumers, including PLAINTIFF DONALD HAWN.

39.    PLAINTIFF DONALD HAWN purchased the Devices manufactured by DEFENDANTS from distributers of diabetic supplies and/or directly from DEFENDANTS. The Devices were in their original packaging which was firmly sealed and in the condition existing at the time of their delivery by DEFENDANTS to their distributors and/or to PLAINTIFF DONALD HAWN's physicians or other health care providers or to PLAINTIFF DONALD HAWN individually.

40.    DEFENDANTS designed, manufactured, marketed, sold, and/or distributed the Devices thereof used by PLAINTIFF DONALD HAWN in the treatment of her diabetic condition.

41.    The Devices were defective and unreasonably dangerous, when sold, in that they failed to properly infuse the required dosage of insulin into PLAINTIFF DONALD HAWN's system despite PLAINTIFF DONALD HAWN's use of the Devices in accordance with DEFENDANTS' labeling and instruction and/or due to a foreseeable misuse of the Devices attributable to DEFENDANTS' faulty design, training, or instruction and not due to any want of care by PLAINTIFF DONALD HAWN.

42.    At all times relevant to this action, DEFENDANTS knew that the Devices, including their components, would be purchased by healthcare providers, physicians, and/or patients, for the purpose of controlling and managing diabetes. At all times relevant to this action, DEFENDANTS knew that the Devices were to be used without inspection for defects. The Devices were intended to and did reach PLAINTIFF DONALD HAWN without substantial change in condition from when they left DEFENDANTS' control.

43.     At all times relevant to this action, DEFENDANTS manufactured the Devices in a manner in which the Devices would fail to operate properly when delivering an insulin dose and/or would fail to shut down automatically, thereby resulting in the Devices delivering too much or too little insulin which can lead to serious injury or death.

44.     The Devices are defectively designed and/or manufactured because the foreseeable risks of mechanical malfunction and failure using a Device that would fail to operate properly when delivering an insulin dose and/or would fail to shut down automatically, thereby resulting in the Device delivering too much or too little insulin which can lead to serious injury or death.

45.     The faulty design, marketing, and/or manufacture of the Devices and the finished Devices themselves manufactured, produced and placed into the stream of commerce by DEFENDANTS were a producing cause of the injuries and damages to PLAINTIFFS as set out herein.

46.     The risk that an incorrect dosage of insulin might be delivered was a risk of harm that was inherent in the product, or that might arise from the intended or reasonably anticipated use of the product.

47.     DEFENDANTS either actually knew, or reasonably should have foreseen, the aforesaid risk of harm at the time it marketed the product.  DEFENDANTS knew or should have known of the design and manufacturing defect and the risk of serious bodily injury that exceeded the benefits associated with the design of the Devices.  Furthermore, the Devices and their defects presented an unreasonably dangerous risk beyond what the ordinary consumer would reasonably expect.

-12-

48.    DEFENDANTS failed to warn, or to adequately warn, of the aforesaid danger, or failed to give instructions, or adequate instructions, on how to avoid the danger.

49.    The product was unreasonably dangerous as marketed because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics.

50.    Furthermore, the Devices failed to perform as an ordinary consumer would expect. At all times relevant to this action, DEFENDANTS knew that the Devices, including their components, would be purchased by healthcare providers, physicians, and/or patients, for the purpose of controlling and managing diabetes.  The Devices failed to properly infuse the required dosage of insulin into PLAINTIFF DONALD HAWN's systems despite PLAINTIFF DONALD HAWN's use of the Devices in accordance with DEFENDANTS' labeling and instruction.

51.    The Devices are inherently dangerous for their intended use due to design and/or manufacturing defect and improper functioning.  DEFENDANTS are, therefore, strictly liable to PLAINTIFFS and have breached their duties of care to PLAINTIFFS.

52.    As a direct and legal result of DEFENDANTS' wrongful conduct, PLAINTIFFS sustained and will continue to sustain severe physical injuries, including but not limited to severe physical, mental and emotional pain and suffering, loss of consortium, economic losses, past loss of income, future loss of earning capacity, and other damages for which PLAINTIFFS are entitled to compensatory damages in an amount to be proven at trial.  DEFENDANTS are liable to PLAINTIFFS jointly and/or severally for all general, special and equitable relief to which PLAINTIFFS are entitled by law.

53.    DEFENDANTS had specific knowledge of the Device failures, that the Devices were not tested or validated in accordance with federal law, specifically deficiencies in quality control at its Puerto Rico production facility, which manufactures many of the Minimed products. According to the FDA investigators, the plant had a wide range of problems that included lax testing of products for defects, proper record keeping, and employing someone with only a high school education and some special training as a medical expert for determining the danger of defects. DEFENDANTS' conduct as set forth herein, was done with oppression, fraud, and/or malice, and in conscious disregard of PLAINTIFF DONALD HAWN's health, safety and welfare.    Accordingly, PLAINTIFFS are entitled to recover exemplary damages.

54.    Additionally, PLAINTIFFS, as a direct and proximate result of the defects, suffered special damages, including the cost of hospital admissions, medical care, attendant care and nursing care.

### A.    Design Defect

55.    The design of the product rendered it unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use.

56.    There was a safer alternative design other than the one used that in reasonable probability would have prevented or significantly reduced the risk of incorrect doses of insulin being administered and causing personal physical injury or physical sickness that would not have impaired the products utility; and was economically and technologically feasible at the time the product left DEFENDANTS' control by the application of existing or reasonably achievable scientific knowledge.

-14-

57. The foregoing defects, more particularly described above, were a producing cause of PLAINTIFFS' injuries and damages, more particularly described below.

**B.    Manufacturing Defect**

58. The product deviated, in its construction or quality, from its specifications or planned output in a manner that rendered it unreasonably dangerous.

59. The product was unreasonably dangerous as manufactured because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics.

60. The foregoing defects, more particularly described above, were a producing cause of PLAINTIFFS' injuries and damages, more particularly described below.

**C.    Failure to Warn**

61. At all relevant times hereto, DEFENDANTS were engaged in the development, testing, manufacturing, marketing and sales of the Device. DEFENDANTS designed, manufactured, assembled and sold the Device to medical professionals and their patients, knowing that they would then be relied upon by patients with Type 1 diabetes as an alternative to multiple daily injections of insulin.

62. DEFENDANTS distributed and sold the Device in the condition in which it left their place of manufacture, in their original form of manufacture, which included the defects described herein. The Device was expected to and did reach PLAINTIFFS without substantial change in its condition as manufactured and sold by DEFENDANTS. At no time did PLAINTIFFS have reason to believe that the Device was in a condition not suitable for the Device's proper and intended use among the patients in whom the Devices were prescribed.

63.     The Device, as it was designed, developed, tested, manufactured, marketed, and sold or otherwise placed into the stream of commerce by DEFENDANTS, was in a dangerous and defective condition and posed a threat to any user or consumer of the Device.  PLAINTIFFS were and are in a class of person that DEFENDANTS should have been considered to be subject to the harm caused by the defective nature of the Device.

64.     The Device was prescribed to PLAINTIFF DONALD HAWN and used in the manner for which it was intended, that is, to provide a constant source of insulin and thereby regulate blood sugar.  This use has resulted in jury to PLAINTIFFS.

65.     PLAINTIFFS were not able to discover, nor could they have discovered through the exercise of reasonable care, the defective nature of the Device.  Further, in no way could PLAINTIFFS have known that DEFENDANTS had designed, developed, and manufactured the Device in such way as to increase the risk of harm, injury or death to the recipients of the Device.

66.     The Devices were defective due to inadequate warnings or instruction because DEFENDANTS knew or should have known that the Devices created a high risk of bodily injury and serious harm, that the Devices were not performing properly, that DEFENDANTS were cited for deficiencies in quality control at its Puerto Rico production facility, which manufactures many of the Minimed products, and that the Devices were far less reliable than insulin pumps manufactured by its competitors.  DEFENDANTS failed to adequately and timely warn consumers of this risk.

67.     DEFENDANTS failed to warn its user, PLAINTIFFS DONALD HAWN, of the dangers of using the pump without first turning the "Auto Shut-Off" feature on, as the Devices are shipped with the feature turned off.  The "Auto Shut-Off" feature is designed to stop the insulin flow

-16-

in cases of "pump runaway" that cause excessive insulin delivery resulting in hypoglycemia. However, DEFENDANTS failed to advise, warn and/or instruct user, PLAINTIFF DONALD HAWN, about this feature or the dangers of having the feature turned off. As such, the user, PLAINTIFF DONALD HAWN, was not sufficiently alerted to the possible dangers of the Device.

68.    As a direct and legal result of DEFENDANTS' wrongful conduct, PLAINTIFFS sustained and will continue to sustain severe physical injuries, including but not limited to, severe physical, mental and emotional pain and suffering, loss of consortium, economic losses, past loss of income, future loss of earning capacity and other damages for which PLAINTIFFS are entitled to compensatory damages in an amount to be proven at trial. DEFENDANTS are liable to PLAINTIFFS jointly and/or severally for all general, special and equitable relief to which PLAINTIFFS are entitled by law.

69.    DEFENDANTS had specific knowledge of the Device failures, that the Devices were not tested or validated in accordance with federal law, specifically deficiencies in quality control at its Puerto Rico production facility, which manufactures many of the Minimed products. According to the FDA investigators, the plant had a wide range of problems that included lax testing of products for defects, proper record keeping, and employing someone with only a high school education and some special training as a medical expert for determining the danger of defects. DEFENDANTS' conduct as set forth herein, was done with oppression, fraud, and/or malice, and in conscious disregard of PLAINTIFF DONALD HAWN's health, safety and welfare. Accordingly, PLAINTIFFS are entitled to recover exemplary damages.

70.    Additionally, PLAINTIFFS, as a direct and proximate result of the defects, suffered special damages, including the cost of medical care, testing and appointments and attendant care.

## SECOND CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

Brought by PLAINTIFFS against DEFENDANTS MEDTRONIC MINIMED, INC.,

MEDTRONIC, INC., UNOMEDICAL DEVICES SA de CV, UNOMEDICAL A/S,

CONVATEC, INC., and DOES 1-100

71.     PLAINTIFFS refer to and incorporate all of the paragraphs of this complaint as though fully set forth herein.

72.     At all times relevant to this action and prior to the use of the Devices by PLAINTIFF DONALD HAWN, DEFENDANTS utilized advertising media, professional publications and sales representatives to urge the use and purchase of the Devices, and expressly warranted to members of the general public, including PLAINTIFF DONALD HAWN and her physicians, that the Device was state-of-the-art technology and that insulin pump therapy has improved the health and quality of life for thousands of individuals.    DEFENDANTS expressly represented and warranted to both healthcare providers and to the ultimate consumers of its products, including PLAINTIFF DONALD HAWN, that the Minimed insulin pumps and Minimed Paradigm Quick-Set Infusion Sets would safely and efficiently deliver the required measured dose of insulin into the consumers' system to prevent blood sugar imbalance and the consequences thereof.

73.     Prior to the purchase of the Devices by PLAINTIFF DONALD HAWN as alleged above, DEFENDANTS induced PLAINTIFFS' purchase of said Devices by expressly warranting or representing directly to PLAINTIFFS, as well as her physician and/or other healthcare providers, that the Devices would safely and efficiently deliver the required dosage of insulin at the specific times required.    DEFENDANTS by their acts and those of their agents expressly warranted to

PLAINTIFFS that it was safe to use the Device. PLAINTIFF DONALD HAWN and her physicians relied upon the said express warranties of DEFENDANTS in the purchase and use of the Device.

74.    In purchasing the Devices, PLAINTIFFS relied on the skill and judgment of DEFENDANTS and on DEFENDANTS' express warranties and representations as described above. Such warranties and representations formed a part of the basis of the bargain in which PLAINTIFFS selected and purchased the Devices.

75.    DEFENDANTS breached the express warranty by designing, manufacturing and marketing a defective product that, in fact, failed to deliver the prescribed measured dosage of insulin at the specific time required.

76.    The Device was not effective, proper and safe for its intended use as expressly warranted by a DEFENDANTS, in that the Device was defective, thereby causing serious injury when the Device was being put to their intended use.

77.    DEFENDANTS had specific knowledge of the Device failures, that the Devices were not tested or validated in accordance with federal law, specifically deficiencies in quality control at its Puerto Rico production facility, which manufactures many of the Minimed products. According to the FDA investigators, the plant had a wide range of problems that included lax testing of products for defects, proper record keeping, and employing someone with only a high school education and some special training as a medical expert for determining the danger of defects. DEFENDANTS' conduct as set forth herein, was done with oppression, fraud, and/or malice, and in conscious disregard of PLAINTIFF DONALD HAWN's health, safety and welfare. Accordingly, PLAINTIFFS are entitled to recover exemplary damages.

78.    As a direct and legal result of DEFENDANTS' wrongful conduct, PLAINTIFFS

sustained and will continue to sustain severe physical injuries, severe emotional distress, loss of

consortium, economic losses, past loss of income, future loss of earning capacity and other damages

for which PLAINTIFFS are entitled to compensatory and equitable relief to which PLAINTIFFS are

entitled by law.  The DEFENDANTS' breach of express warranties proximately and directly caused

PLAINTIFFS' injuries and damages as set out herein.

### THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

Brought by PLAINTIFFS against DEFENDANTS MEDTRONIC MINIMED, INC.,

MEDTRONIC, INC., UNOMEDICAL DEVICES SA de CV, UNOMEDICAL A/S,

CONVATEC, INC., and DOES 1-100

79.    PLAINTIFFS refer to and incorporate all of the paragraphs of this complaint as

though fully set forth herein.

80.    DEFENDANTS knew or should have known the particular purpose for which

PLAINTIFF DONALD HAWN purchased the Devices because the purpose for which

DEFENDANTS sold these particular medical devices was solely for the infusion of insulin into the

ultimate consumers' system to control his or her diabetic condition.

81.    DEFENDANTS impliedly warranted that the Minimed insulin pumps and Minimed

Paradigm Quick-Set Infusion Sets were merchantable, and fit and safe for ordinary use and the

purpose for which they were designed and manufactured and that they were, in fact, suitable for the

use made by PLAINTIFF DONALD HAWN.

82.    In purchasing and using the medical devices described herein, PLAINTIFFS relied on DEFENDANTS' skill and judgment and the implied warranty of fitness for a particular purpose for which PLAINTIFFS purchased the Devices.

83.    The Devices were not fit for use for their intended purpose because they had a tendency to cause the infusion of an incorrect dose of insulin into the system of PLAINTIFF DONALD HAWN.

84.    DEFENDANTS impliedly warranted that the Devices were of a merchantable quality, fit, safe and in proper condition for the ordinary use for which such devices are designed, manufactured, marketed and used.

85.    In purchasing and using the Devices designed, produced and marketed by DEFENDANTS, PLAINTIFFS relied on DEFENDANTS' skill and judgment, and the implied warranty of merchantability for the purpose for which PLAINTIFFS purchased the Devices.

86.    The Devices purchased by PLAINTIFFS were not merchantable in that among other things, either in conjunction or separately, they had the tendency to fail to introduce the required regular measured dosage of insulin into PLAINTIFF DONALD HAWN's body.  For this reason, the product was unfit for ordinary purposes.  The product was unfit for ordinary purposes because it was unreasonably dangerous.

87.    As a result of a manufacturing defect, DEFENDANTS' Device was defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected PLAINTIFFS to severe and permanent injuries and risk of death.

88.     DEFENDANTS breached the implied warranties of merchantability and fitness for a particular purpose when their Device was sold to PLAINTIFFS in that the Device is defective and has failed to function properly.

89.     Any disclaimers of implied warranties are ineffectual as they were not proved to PLAINTIFFS or otherwise made known to PLAINTIFFS.  In addition, any such disclaimers are unconscionable.

90.     Any purported written warranty fails of its essential purpose.

91.     As a direct and proximate result of DEFENDANTS' wrongful conduct, PLAINTIFFS sustained and will continue to sustain severe physical injuries, severe emotional distress, loss of consortium, economic losses, past loss of income, future loss of earning capacity, and other damages for which PLAINTIFFS are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.  DEFENDANTS are liable to PLAINTIFFS jointly and/or severally for all general, special and equitable relief to which PLAINTIFFS are entitled by law. Thus, DEFENDANTS' breach of express warranties proximately and directly caused PLAINTIFFS' injuries and damages as set out herein.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

Brought by PLAINTIFFS against DEFENDANTS MEDTRONIC MINIMED, INC.,

MEDTRONIC, INC., UNOMEDICAL DEVICES SA de CV, UNOMEDICAL A/S,

CONVATEC, INC., and DOES 1-100

92.     PLAINTIFFS refer to and incorporate all of the paragraphs of this complaint as though fully set forth herein.

93.    At all times material hereto DEFENDANTS were engaged in the manufacture of Devices used to infuse measured doses of insulin into the systems of patients with diabetic conditions.  These Devices were marketed and sold to various physicians and other healthcare providers and directly to the ultimate consumers, including PLAINTIFF DONALD HAWN.

94.    DEFENDANTS owed to PLAINTIFFS and the public a duty to use reasonable care in the testing and inspecting of their Devices, in designing the Devices and in manufacturing and marketing those Devices.  At all relevant times, DEFENDANTS had a duty and continued to owe a duty to PLAINTIFFS to manufacture a Device which was safe and did not pose a threat of harm, thereby alleviating the possibility of the Device delivering too much or too little insulin.

95.    At all relevant times, DEFENDANTS had a duty to warn the FDA and PLAINTIFFS of the defective nature of the Devices and that the Devices could, and had, failed to operate properly allowing the Devices to deliver too much insulin and malfunctioned.

96.    DEFENDANTS breached their duty of reasonable care to PLAINTIFFS by failing to warn PLAINTIFFS of the defective nature of the Devices and by failing to warn PLAINTIFFS of the risk that the Device could fail to vent air pressure properly and/or that the "Auto Shut-Off" feature would malfunction allowing deliver of too mich or too little insulin when DEFENDANTS were aware of these problems with the Devices and when DEFENDANTS had already received a Warning Letter from the FDA, which highlighted deficiencies in quality control at its Puerto Rico production facility, which manufactures many of the Minimed products.  According to the FDA investigators, the plant had a wide range of problems that included lax testing of products for defects, proper record keeping, and employing someone with only a high school education and some special training as a medical expert for determining the danger of defects.

-23-

97.    At all relevant times, DEFENDANTS had a duty to PLAINTIFFS to notify and warn the FDA, PLAINTIFF DONALD HAWN's treating physicians, PLAINTIFFS and the public at the earliest possible date of known design and manufacturing defects in the Device.

98.    DEFENDANTS breached their duty of reasonable care to PLAINTIFF DONALD HAWN by failing to notify and warn the FDA, PLAINTIFF DONALD HAWN's treating physicians, PLAINTIFFS and the public at the earliest possible date of known design and manufacturing defects in the Devices because DEFENDANTS had been aware of the defect.

99.    At all relevant times, DEFENDANTS had a duty to cease any shipment of all recalled Devices.

100.    DEFENDANTS breached their duty of reasonable care to PLAINTIFFS by failing to exercise due care under the circumstances.

101.    As a direct and legal result of DEFENDANTS' wrongful conduct, PLAINTIFFS have sustained and will continue to sustain severe physical injuries, severe mental and emotional distress, and other pain and suffering.

102.    As a legal result of the acts and omissions alleged herein, PLAINTIFFS have incurred and will continue to incur expenses for hospital, medical, attendant care, and nursing care.

103.    As a further direct and proximate result of DEFENDANTS' misconduct, PLAINTIFFS were prevented from attending to PLAINTIFFS' usual employment. PLAINTIFFS will continue to be prevented from attending PLAINTIFFS' usual employment and therefore will be further diminished in PLAINTIFFS' earning capacity.

104.    DEFENDANTS breached their duty by being negligent in their design, manufacture, and marketing of the Minimed Paradigm Quick-Set Infusion Sets in one or more of the following particulars, among others:

(a)    In designing Minimed Paradigm Quick-Set Infusion Sets in a manner which caused them to fail to deliver the proper dosage of insulin into the system of patients including PLAINTIFF DONALD HAWN;

(b)    In failing to adequately test the Minimed Paradigm Quick-Set Infusion Sets;

(c)    In failing to properly market the Minimed Paradigm Quick-Set Infusion Sets;

(d)    In failing to provide adequate warnings, information about the risks and hazards of the Minimed Paradigm Quick-Set Infusion Sets;

(e)    In failing to provide proper instructions to enable consumers to accurately use the Minimed Paradigm Quick-Set Infusion Sets;

(f)    In delivering the Minimed Paradigm Quick-Set Infusion Sets directly to consumers without sufficient personal training on the instructions for using the Device;

(g)    In failing to properly manufacture and assemble the Minimed Paradigm Quick-Set Infusion Sets.

105.    The design, manufacture, marketing and function of the Minimed Paradigm Quick-Set Infusion Sets were within DEFENDANTS' exclusive control.

-25-

106.    The specific facts concerning the design, manufacture, marketing, and function of the Minimed Paradigm Quick-Set Infusion Sets are particularly within the knowledge of DEFENDANTS, and PLAINTIFFS have no means of ascertaining the method or manner in which the Minimed Paradigm Quick-Set Infusion Sets were designed, manufactured or marketed.

107.    The Minimed Paradigm Quick-Set Infusion Sets designed, produced and marketed by DEFENDANTS came into PLAINTIFFS' possession in the same condition as they were in when they left the control of DEFENDANTS.

108.    The occurrences that caused harm to PLAINTIFF DONALD HAWN, as described above, were ones which in the ordinary course of events would not have occurred without negligence on the part of DEFENDANTS.  For these reasons, the doctrine of *res ipsa loquitur* permits a finder of fact to infer negligence on the part of DEFENDANTS.

109.    As a direct and proximate result of the acts and omissions of DEFENDANTS, whether taken singularly or in any combination, PLAINTIFFS suffered injuries and damages as more fully set forth herein.

## JURY DEMAND

110.    PLAINTIFFS hereby request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS demand a jury trial and pray for judgment against DEFENDANTS, and each of them, jointly and severally, as follows:

1.    For non-economic damages according to proof;

2.    For economic damages, past loss of income, and future loss of earning capacity according to proof;

3.      For pre-judgment interest according to law;

4.      For attorney's fees and costs of suit incurred herein;

5.      For punitive damages against DEFENDANTS;

6.      For such other and further relief as the court deems just and proper.

Date: May 5, 2014.

Respectfully submitted,

**HOUSSIERE, DURANT & HOUSSIERE, LLP**


By:    _/s/ Charles R. Houssiere, III_
          Charles R. Houssiere, III
          Texas Bar No. 10050700
          Randal A. Kauffman
          Texas Bar No. 11111700
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Telephone: (713)626-3700
Facsimile: (713)626-3709

ATTORNEYS FOR PLAINTIFFS